## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCOTT ROWINSKI, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CELGENE CORPORATION, MARK J. ALLES, RICHARD W. BARKER, HANS E. BISHOP, MICHAEL W. BONNEY, MICHAEL D. CASEY, CARRIE S. COX, MICHAEL A. FRIEDMAN, JULIA A. HALLER, PATRICIA A. HEMINGWAY HALL, JAMES J. LOUGHLIN, ERNEST MARIO, and JOHN H. WEILAND,, <br><br> Defendants. | ) ) ) ) ) ) ) **Case No.** ) ) ) **CLASS ACTION** ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Scott Rowinski ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

### NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Celgene Corporation ("Celgene" or the "Company") against Celgene and the members of Celgene's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Celgene will be acquired by Bristol-Myers Squibb Company ("Bristol-Myers Squibb")

through Bristol-Myers Squibb's wholly owned subsidiary Burgundy Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.　　　On January 3, 2019, Bristol-Myers Squibb and Celgene issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated January 2, 2019 (the "Merger Agreement") to sell Celgene to Bristol-Myers Squibb.  Under the terms of the Merger Agreement, each Celgene stockholder will be entitled to receive $50.00 in cash, one share of Bristol-Myers Squibb common stock and one contingent value right ("CVR") for each share of Celgene common stock they own (the "Merger Consideration").  Based on the closing price of Bristol-Myers Squibb common stock on January 31, 2019, the cash and stock components of the Merger Consideration, excluding the CVR, have an implied value of $99.37 per Celgene share.

3.　　　Each holder of a CVR is entitled to receive $9.00 per CVR if the CVR milestone is achieved.  The CVR milestone means the satisfaction of all of the following: (i) the bb2121 milestone[1] has occurred on or prior to March 31, 2021; (ii) the JCAR017 milestone[2] has occurred on or prior to December 31, 2020; and (iii) the Ozanimod milestone[3] has occurred on or prior to December 31, 2020.

---

[1] bb2121 milestone means the first approval by the Food and Drug Administration ("FDA") of a biologic license application ("BLA") that grants Celgene, Bristol-Myers Squibb or any of their respective affiliates, as defined in the CVR agreement, (or their respective successors and assigns) the right to commercially manufacture, market and sell bb2121 in the United States in accordance with applicable law for the treatment of relapsed/refractory multiple myeloma in humans.

[2] JCAR017 milestone means the first approval by the FDA of a BLA that grants Celgene, Bristol-Myers Squibb or any of their respective affiliates, as defined in the CVR agreement, (or their respective successors and assigns) the right to commercially manufacture, market and sell JCAR017 in the United States in accordance with applicable law for the treatment of any relapsed-refractory diffuse large B cell lymphoma in humans.

[3] Ozanimod milestone means the first approval by the FDA of a new drug application ("NDA") that grants Celgene, Bristol-Myers Squibb or any of their respective affiliates, as defined in the CVR agreement, (or their respective successors and assigns) the right to commercially manufacture, market and sell Ozanimod in the United States in accordance with applicable law for the treatment of relapsing multiple sclerosis in humans.

4.      Upon consummation of the Proposed Transaction, Bristol-Myers Squibb stockholders are expected to own approximately 69% of the company, and Celgene stockholders are expected to own approximately 31%.  The Proposed Transaction has an equity value of approximately $74 billion.

5.      On February 22, 2019, Celgene filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Celgene stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Celgene's and Bristol-Myers Squibb's financial projections utilized by the Company's financial advisors J.P. Morgan Securities LLC ("J.P. Morgan") and Citigroup Global Markets Inc. ("Citigroup") in connection with their evaluation of the Proposed Transaction; (ii) the valuation analyses prepared by J.P. Morgan and Citigroup in connection with the rendering of their fairness opinions; and (iii) Celgene insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Celgene stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

6.      In short, unless remedied, Celgene's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

10.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Celgene.

11.     Defendant Celgene is a Delaware corporation, with its principal executive offices located at 86 Morris Avenue, Summit, New Jersey 07901.   The Company is a global biopharmaceutical company engaged primarily in the discovery, development and commercialization of innovative therapies for the treatment of cancer and inflammatory diseases. Celgene's common stock trades on the NASDAQ Global Select Market under the ticker symbol "CELG."

12.     Defendant Mark J. Alles ("Alles") has been Chief Executive Officer ("CEO") of the Company since March 2016, a director of the Company since February 2016 and Chairman of the Board since February 2018.   Defendant Alles previously served as President and Chief Operating Officer of the Company from August 2014 through February 2016, Executive Vice President and Global Head of Hematology and Oncology from December 2012 until July 2014 and was also Celgene's Chief Commercial Officer.

13.     Defendant Richard W. Barker ("Barker") has been a director of the Company since January 2012.

14.     Defendant Michael W. Bonney ("Bonney") has been a director of the Company since April 2015.

15.     Defendant Michael D. Casey ("Casey") has been a director of the Company since August 2002 and independent lead director since June 2007.

16.     Defendant Carrie S. Cox ("Cox") has been a director of the Company since December 2009.

17.     Defendant Michael A. Friedman ("Friedman") has been a director of the Company since February 2011.

18.     Defendant Julia A. Haller ("Haller") has been a director of the Company since October 2015.

19.     Defendant Patricia A. Hemingway Hall ("Hemingway Hall") has been a director of the Company since April 2018.

20.     Defendant James J. Loughlin ("Loughlin") has been a director of the Company since January 2007.

21.     Defendant Ernest Mario ("Mario") has been a director of the Company since August 2007.

22.     Defendant John H. Weiland ("Weiland") has been a director of the Company since February 2018.

23.     Defendants identified in paragraphs 12-22 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

24.     Bristol-Myers Squibb is a Delaware corporation with its principal executive offices located at 430 E. 29th Street, 14th Floor, New York, New York 10016.  Bristol-Myers Squibb is engaged in the discovery, development, licensing, manufacturing, marketing, distribution and sale of biopharmaceutical products on a global basis.

25.     Merger Sub is a Delaware corporation and wholly-owned subsidiary of Bristol-Myers Squibb

**CLASS ACTION ALLEGATIONS**

26.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Celgene common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

28.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of January 29, 2019, there were 701,024,507 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Celgene or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

29.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

30.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

32.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

33.     Incorporated in 1986, Celgene is an integrated global biopharmaceutical company engaged primarily in the discovery, development and commercialization of innovative therapies for the treatment of cancer and inflammatory diseases through next-generation solutions in protein homeostasis, immuno-oncology, epigenetics, immunology and neuro-inflammation.   The Company's primary commercial stage products include REVLIMID, POMALYST/IMNOVID, OTEZLA, ABRAXANE, VIDAZA, azacitidine for injection, THALOMID and IDHIFA.

34.     Celgene continues to invest substantially in research and development in support of multiple ongoing clinical development programs.  For example, in the first, second and third quarters of 2018, Celgene spent $2,203 million, $1,251 million, and $1,081 million, respectively, on research and development.

35.     The Company's clinical trial activity includes trials in the disease areas of hematology, solid tumors, inflammation and immunology.  There are more than 300 clinical trials at major medical centers using compounds from Celgene.  Investigational compounds are being studied for patients with incurable hematological and solid tumor cancers, including multiple myeloma, myelodysplastic syndromes, chronic lymphocytic leukemia, non-Hodgkin's lymphoma, triple-negative breast cancer and pancreatic cancer.

36.     On May 4, 2018, Celgene announced its first quarter 2018 financial results.  For the quarter, the Company reported net product sales of $3,531 million, a 20% increase compared to the first quarter of 2017.  Total revenue for the quarter increased 19% to $3,538 million, compared to $2,962 million in the first quarter of 2017.  Defendant Alles is quoted as stating, "[s]trong global demand and excellent commercial execution drove our exceptional first quarter results, leading to improvement in our 2018 financial guidance. . . . With multiple catalysts for growth expected over the next 12 to 18 months, we are reaffirming our 2020 outlook."

37.     On July 26, 2018, Celgene reported its second quarter 2018 financial results, including raising full-year total revenue guidance to $15 billion.  Net product sales were $3,808 million, a 17% increase from the second quarter of 2017.  The Company's net income was $1,045 million with diluted earnings per share ("EPS") of $1.43, compared to net income of $1,101 million and diluted EPS of $1.36 in the second quarter of 2017.  Commenting on the quarter's strong financial results, defendant Alles is quoted as stating, "[w]e continued to deliver strong operating

performance in the second quarter, leading us to update our 2018 financial guidance. . . . Our next innovation cycle is underway. We are meaningfully advancing our pipeline, while strengthening the organization to maximize future growth opportunities."

38.     On October 25, 2018, Celgene announced its third quarter 2018 financial results, in which it again raised Celgene's full-year total revenue guidance to $15.2 billion. For the quarter, net product sales were $3,890 million, an 18% increase from the third quarter of 2017. The Company's total revenue also increased 18% to $3,892 million, compared to $3,827 million in the third quarter of 2017. Net income was $1,082 million and diluted EPS was $1.50, compared to net income of $988 and diluted EPS of $1.21 in the third quarter of 2017. Defendant Alles commented on the successful quarter, stating, "[e]xcellent top- and bottom-line momentum in the third quarter supports raising our 2018 financial guidance. . . . We are focused on shaping Celgene's future by rapidly advancing our late-stage pipeline, accelerating promising early research programs, and strengthening the organization."

**The Proposed Transaction**

39.     On January 3, 2019, Celgene and Bristol-Myers Squibb issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NEW YORK & SUMMIT, N.J., January 3, 2019 – Bristol-Myers Squibb Company (NYSE:BMY) and Celgene Corporation (NASDAQ:CELG) today announced that they have entered into a definitive merger agreement under which Bristol-Myers Squibb will acquire Celgene in a cash and stock transaction with an equity value of approximately $74 billion. Under the terms of the agreement, Celgene shareholders will receive 1.0 Bristol-Myers Squibb share and $50.00 in cash for each share of Celgene. Celgene shareholders will also receive one tradeable Contingent Value Right (CVR) for each share of Celgene, which will entitle the holder to receive a payment for the achievement of future regulatory milestones. The Boards of Directors of both companies have approved the combination.

> The transaction will create a leading focused specialty biopharma company well positioned to address the needs of patients with cancer, inflammatory and immunologic disease and cardiovascular disease through high-value innovative medicines and leading scientific capabilities. With complementary areas of focus,

the combined company will operate with global reach and scale, maintaining the speed and agility that is core to each company's strategic approach.

Based on the closing price of Bristol-Myers Squibb stock of $52.43 on January 2, 2019, the cash and stock consideration to be received by Celgene shareholders at closing is valued at $102.43 per Celgene share and one CVR (as described below). When completed, Bristol-Myers Squibb shareholders are expected to own approximately 69 percent of the company, and Celgene shareholders are expected to own approximately 31 percent.

"Together with Celgene, we are creating an innovative biopharma leader, with leading franchises and a deep and broad pipeline that will drive sustainable growth and deliver new options for patients across a range of serious diseases," said Giovanni Caforio, M.D., Chairman and Chief Executive Officer of Bristol-Myers Squibb. "As a combined entity, we will enhance our leadership positions across our portfolio, including in cancer and immunology and inflammation. We will also benefit from an expanded early- and late-stage pipeline that includes six expected near-term product launches. Together, our pipeline holds significant promise for patients, allowing us to accelerate new options through a broader range of cutting-edge technologies and discovery platforms."

Dr. Caforio continued, "We are impressed by what Celgene has accomplished for patients, and we look forward to welcoming Celgene employees to Bristol-Myers Squibb. Our new company will continue the strong patient focus that is core to both companies' missions, creating a shared organization with a goal of discovering, developing and delivering innovative medicines for patients with serious diseases. We are confident we will drive value for shareholders and create opportunities for employees."


"For more than 30 years, Celgene's commitment to leading innovation has allowed us to deliver life-changing treatments to patients in areas of high unmet need. Combining with Bristol-Myers Squibb, we are delivering immediate and substantial value to Celgene shareholders and providing them meaningful participation in the long-term growth opportunities created by the combined company," said Mark Alles, Chairman and Chief Executive Officer of Celgene. "Our employees should be incredibly proud of what we have accomplished together and excited for the opportunities ahead of us as we join with Bristol-Myers Squibb, where we can further advance our mission for patients. We look forward to working with the Bristol-Myers Squibb team as we bring our two companies together."

\* \* \*

Based on the closing price of Bristol-Myers Squibb stock on January 2, 2019, the cash and stock consideration to be received by Celgene shareholders is valued at $102.43 per share. The cash and stock consideration represents an approximately

51 percent premium to Celgene shareholders based on the 30-day volume weighted average closing stock price of Celgene prior to signing and an approximately 54 percent premium to Celgene shareholders based on the closing stock price of Celgene on January 2, 2019. Each share also will receive one tradeable CVR, which will entitle its holder to receive a one-time potential payment of $9.00 in cash upon FDA approval of all three of ozanimod (by December 31, 2020), liso-cel (JCAR017) (by December 31, 2020) and bb2121 (by March 31, 2021), in each case for a specified indication.

The transaction is not subject to a financing condition. The cash portion will be funded through a combination of cash on hand and debt financing. Bristol-Myers Squibb has obtained fully committed debt financing from Morgan Stanley Senior Funding, Inc. and MUFG Bank, Ltd. Following the close of the transaction, Bristol-Myers Squibb expects that substantially all of the debt of the combined company will be pari passu.

**Insiders' Interests in the Proposed Transaction**

40.     Celgene insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Celgene.

41.     Notably, certain of the Company's executive officers have potentially secured positions for themselves upon consummation of the Proposed Transaction.  In the January 3, 2019 joint press release announcing the Proposed Transaction, Giovanni Caforio ("Caforio"), CEO of Bristol-Myers Squibb, is quoted as stating, "[w]e are impressed by what Celgene has accomplished for patients, and we look forward to welcoming Celgene employees to Bristol-Myers Squibb." Defendant Alles is also quoted as stating, "[o]ur employees should be incredibly proud of what we have accomplished together and excited for the opportunities ahead of us as we join with Bristol-Myers Squibb, where we can further advance our mission for patients.  We look forward to working with the Bristol-Myers Squibb team as we bring our two companies together."

42.     Moreover, if they are terminated in connection with the Proposed Transaction, Celgene's named executive officers stand to receive millions in golden parachute compensation, including defendant Alles, who could receive **$27.8 million**, as set forth in the following table:

| Named Executive Officer[1] | Cash ($)[2] | Equity ($)[3] | Perquisites / Benefits ($)[4] | Tax Reimbursement ($) | Total ($) |
|---|---|---|---|---|---|
| Mark J. Alles | 10,411,397 | 17,321,068 | 159,200 | 0 | 27,891,665 |
| David V. Elkins | 3,992,613 | 8,044,450 | 137,600 | 2,938,139 | 15,112,802 |
| Peter N. Kellogg | 4,440,323 | 7,340,651 | 137,600 | 0 | 11,918,574 |
| S.J. Rupert Vessey | 3,909,714 | 5,441,003 | 137,600 | 2,706,719 | 12,195,036 |

## The Proxy Statement Contains Material Misstatements or Omissions

43.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Celgene's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights.

44.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Celgene's and Bristol-Myers Squibb's financial projections utilized by the Company's financial advisors J.P. Morgan and Citigroup in connection with their evaluation of the Proposed Transaction; (iii) the valuation analyses prepared by J.P. Morgan and Citigroup in connection with the rendering of their fairness opinions; and (iii) Celgene insiders' potential conflicts of interest. Accordingly, Celgene stockholders are being asked to vote for the Proposed Transaction or exercise their appraisal rights without all material information at their disposal.

*Material Omissions Concerning Celgene's and Bristol-Myers Squibb's Financial Projections*

45.     First, the Proxy Statement omits material information regarding the Company's and Bristol-Myers Squibb's financial projections provided by Celgene's management and relied upon by J.P. Morgan and Citigroup for their analyses.

46.     For example, with respect to Celgene's financial projections, the Proxy Statement fails to disclose the projection line items used to derive the Company's unlevered free cash flows, including (i) taxes; (ii) capital expenditures; (iii) changes in net working capital; and (iv) milestone payments, for each of the Celgene management case 1, Celgene management case 2, Celgene management case 3 and Celgene blended management case projections.

47.     Similarly, with respect to the Celgene adjusted Bristol-Myers Squibb financial projections, the Proxy Statement fails to disclose the projection line items used to derive Bristol-Myers Squibb's unlevered free cash flows, including (i) other equity income/royalties; (ii) taxes; (iii) capital expenditures; (iii) changes in net working capital; and (iv) milestones and other items.

48.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinions of Celgene's Financial Advisors" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's and Citigroup's Financial Analyses***

49.     The Proxy Statement describes J.P. Morgan's and Citigroup's fairness opinions and the various valuation analyses they performed in support of their opinions.  However, the description of J.P. Morgan's and Citigroup's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Celgene's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Citigroup's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights.  This omitted information, if disclosed, would significantly alter the total mix of information available to Celgene's stockholders.

50.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Celgene, the Proxy Statement fails to disclose (i) quantification of the inputs and assumptions underlying the

discount rate range of 8.50% to 9.50%; (ii) the Company's estimated net debt as of December 31, 2018; and (iii) the perpetuity growth rates for Celgene implied by the analysis.

51.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Bristol-Myers Squibb, the Proxy Statement fails to disclose (i) quantification of the inputs and assumptions underlying the discount rate range of 7.25% to 8.25%; (ii) Bristol-Myers Squibb's estimated net debt and minority interests as of December 31, 2018; (iii) quantification of the potential impact of the UPSA divestiture, as provided by Celgene's management; and (iv) the perpetuity growth rates for Bristol-Myers Squibb implied by the analysis.

52.     With respect to Citigroup's *Discounted Cash Flow Analysis* of Celgene, the Proxy Statement fails to disclose (i) the terminal year estimate of the unlevered free cash flow to be generated by Celgene; (ii) quantification of the inputs and assumptions underlying the discount rate range of 8.3% to 9.5%; (iii) the Company's estimated net debt as of December 31, 2018; and (iv) the perpetuity growth rates for Celgene implied by the analysis.

53.     With respect to Citigroup's *Discounted Cash Flow Analysis* of Bristol-Myers Squibb, the Proxy Statement fails to disclose (i) the terminal year estimate of the unlevered free cash flow to be generated by Bristol-Myers Squibb; (ii) quantification of the inputs and assumptions underlying the discount rate range of 7.9% to 9.2%; (iii) Bristol-Myers Squibb estimated net debt and minority interest as of December 31, 2018; (iv) quantification of the potential impact of the UPSA divestiture, as provided by Celgene's management; and (v) the perpetuity growth rates for Bristol-Myers Squibb implied by the analysis.

54.     Without such undisclosed information, Celgene stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan and Citigroup were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that

positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's and Citigroup's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek to exercise their appraisal rights.

55.     The omission of this information renders the statements in the "Opinions of Celgene's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

56.     Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Celgene insiders.

57.     Specifically, the Proxy Statement fails to disclose the details of any employment related discussions and negotiations that occurred between Bristol-Myers Squibb and Celgene directors and executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of Bristol-Myers Squibb's proposals or indications of interest mentioned management retention.

58.     Notably, certain of the Company's executive officers have potentially secured positions for themselves upon consummation of the Proposed Transaction. In the January 3, 2019 joint press release announcing the Proposed Transaction, Caforio, CEO of Bristol-Myers Squibb, is quoted as stating, "[w]e are impressed by what Celgene has accomplished for patients, and we look forward to welcoming Celgene employees to Bristol-Myers Squibb." Defendant Alles is also quoted as stating, "[o]ur employees should be incredibly proud of what we have accomplished together and excited for the opportunities ahead of us as we join with Bristol-Myers Squibb, where

we can further advance our mission for patients.  We look forward to working with the Bristol-Myers Squibb team as we bring our two companies together."

59.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

60.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

61.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or exercise their appraisal rights and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

62.     Plaintiff repeats all previous allegations as if set forth in full.

63.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

64.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the financial projections utilized by the Company's financial advisors in connection with their financial analyses, the financial analyses performed by the Company's financial advisors, and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

65.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

66.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

67.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

68.     Plaintiff repeats all previous allegations as if set forth in full.

69.     The Individual Defendants acted as controlling persons of Celgene within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Celgene, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

70. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

72. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

73. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Celgene's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Celgene, and against defendants, as follows:

A.   Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Celgene stockholders;

C.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 25, 2019                    PAZUNIAK LAW OFFICE, LLC

                                             */s/ George Pazuniak*
                                             _____
                                             George Pazuniak (#478)
                                             1201 Orange Street
                                             7th Floor, Suite 7114
                                             Wilmington, DE 19801-1186
                                             Tel: (302) 478-4230
                                             Email: gp@del-iplaw.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*